570 P.2d 206

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE ACTION NO. J–37390–1.**

**No. 2 CA–CIV 2509.**

Court of Appeals of Arizona, Division 2.

Aug. 25, 1977.

Review Denied Sept. 27, 1977.

George Haskel Curtis, Tucson, for appellant juvenile.

Bruce E. Babbitt, Atty. Gen., Stephen D. Neely, Pima County Atty., by Sydney K. Davis, Deputy County Atty., Tucson, for appellee State.

## OPINION

HATHAWAY, Judge.

Appellant, whose probation was revoked because of a juvenile court finding that he had committed arson in violation of A.R.S. § 13–232, appeals the order of revocation. As grounds for reversal, he contends that his statements were not voluntary and should have been suppressed and that the state failed to prove the offense of arson as charged.

At approximately 11:30 a.m. on the morning of November 8, 1976, appellant was interviewed by Detective Smith at the Pima County Juvenile Court Center where he was being detained. He had been arrested the evening before, together with another

juvenile, for an incident involving the scattering of FedMart shopping carts around the FedMart parking lot. Sometime later a fire was observed at Kuykendall's Furniture Store located a block away from Fed-Mart. The fire was reported to the Fire Department which arrived about 2 a.m. Extensive damage to the building was caused by the fire.

Detective Smith testified extensively as to the circumstances of his interview with appellant at the Juvenile Court Center on November 8. At that time appellant admitted that he and the other juvenile set fire to one of several cardboard boxes which were stacked against the rear wall of the Kuykendall building. Appellant, in making his statement, also drew a sketch of the premises which illustrated the location of the boxes. This statement was taped and the tape recording was admitted into evidence and played for the juvenile court judge.

In support of his claim that his statement was involuntary and coerced, appellant relies on his own testimony and that of two other juveniles. According to appellant and one of the juveniles, appellant had been struck in the face by a police sergeant prior to the trip to the Juvenile Court Center. The other juvenile agreed that appellant had been struck by the officer but could not tell whether he had been punched or slapped. Appellant contends that after having been struck in the face by a police officer, his subsequent interrogation the following morning by Detective Smith resulted in involuntary statements because his will had been overborne by the prior conduct. Particularly so, he argues, since neither his parents nor his probation officer were present at the interrogation.

■ The record reflects, however, that attempts were made to contact appellant's parents but without success. Also, that his *Miranda* rights were fully explained to him, that he indicated he understood them, and made no request for an attorney. The test in Arizona to determine the voluntary, knowing and intelligent waiver of the right to remain silent by a juvenile is the "totality of circumstances" test. *State v. Rodri-*

*quez,* 113 Ariz. 409, 555 P.2d 655 (1976); *State v. Taylor,* 112 Ariz. 68, 537 P.2d 938 (1975), cert. den., 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976). The fact that appellant's parents were not present was only one of the elements to be considered by the juvenile court in determining whether appellant's statement was voluntary and whether he intelligently comprehended his rights. *State v. Hardy,* 107 Ariz. 583, 491 P.2d 17 (1971).

Detective Smith testified that at the time he advised appellant of his *Miranda* rights, appellant did not seem upset but the officer felt he was nervous. After explaining his rights, the officer asked appellant if he had any questions, to which he received a negative answer. He described appellant's attitude as "defiant" and observed nothing that would indicate appellant was afraid of him. Furthermore, appellant had had numerous contacts with the juvenile court which would indicate that this was not the first time he had been informed of his *Miranda* rights. In fact, appellant admitted to prior contact with at least four attorneys and that he understood his right to have an attorney. Although appellant stated that he had eaten no breakfast, his own testimony revealed that breakfast had in fact been served to him. Nor was there any evidence that he had been badgered or interrogated at length. Detective Smith used no threatening tone of voice and made neither threats nor promises.

■ We hold that, under the "totality of circumstances", giving deference to the juvenile judge's opportunity to observe first hand the witnesses and their demeanor there was no clear, manifest error in the court's finding that appellant's statement was voluntary and admissible.

■ Appellant's second contention is that the state failed to prove a violation of A.R.S. § 13-232 which provides:

"A person who wilfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any building or structure of any class or character, whether the

property of himself or of another, not included or described in § 13–231, is guilty of arson in the second degree . . . ."

To be a wilful and malicious burning in the law of arson, the burning must simply be done voluntarily and without excuse or justification and without any bona fide claim of right. An intent or animus against the property itself or its owner is not an element of common law arson. *State v. White,* 288 N.C. 44, 215 S.E.2d 557 (1975); 2 Wharton's Criminal Law and Procedure, § 390. "Wilfully" means intentionally as distinguished from accidentally or involuntarily, i.e., the fire must be set knowingly and stubbornly with an unlawful purpose. 6A C.J.S. Arson § 8; 5 Am.Jur.2d Arson and Related Offenses, § 11.

The word "maliciously" denotes that malice which characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; that state of mind which actuates conduct injurious to others without lawful reason, cause or excuse. *State v. Dunn,* 199 N.W.2d 104 (Iowa 1972).

Appellant admitted that his co-conspirator, Jacky Olsen, had suggested that they stack up the cardboard boxes and set them on fire. According to him, he responded, "I don't want the place to burn down." Jacky, however, said, "Why not?" Appellant stated that he believed Jacky wanted the building to catch on fire. Although both sides of the box were lit, appellant said he only lit one side.

Appellant and Jacky then jumped over the fence surrounding the premises and the fire had started when they departed. They went to a friend's house nearby and watched the fire for a brief period, then returned to the alley near the fire scene to watch the fire. Appellant admitted that he knew what he was doing and that it was against the law. Also, he knew that Jacky wanted to burn down the building.

We believe that appellant's participation in setting fire to the cardboard box, under these circumstances, supports the conclusion that he had a wilful and malicious intent. His acts were not merely reckless or negligent as in *Grable v. Varela,* 115 Ariz. 222, 564 P.2d 911 (App.1977).

Affirmed.

HOWARD, C. J., and RICHMOND, J., concurring.